Signed: September 26, 2007

**SO ORDERED**



NANCY V. ALQUIST
U. S. BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

In re: *

JAMES E. REID, * Case No. 05-11977-NVA
(Chapter 13)

Debtor *

* * * * * * * * * * * * *

**MEMORANDUM OF DECISION SUSTAINING IN PART, AND OVERRULING IN PART, DEBTOR'S OBJECTION [104]TO CLAIM OF KNARF INVESTMENTS**

For the Court's consideration are the following: Objection [104] to Claim of Knarf Investments filed by James E. Reid, the debtor herein (the "Debtor" or " Mr. Reid"), Response [107] by Creditor Knarf Investments ("Knarf"), and Reply [114] by Mr. Reid. There also appeared to be similar papers addressing the same factual and legal issues filed by both Knarf and the Debtor, but at the start of an evidentiary hearing held on this matter on May 21, 2007, the parties agreed that papers [142] [143] and [150] were subsumed by, or duplicitive of, the foregoing papers, and were thereby voluntarily stricken by agreement of the parties.

Knarf's Proof of Claim

This Chapter 13 case is not the first time that Knarf and the Debtor have done battle in the courtroom. On January 10, 2001, Mr. Reid filed a Chapter 13 bankruptcy case (Case No. 01-50422-

SD), and Knarf filed a proof of claim in that case, alleging that it was owed $32,545.41 for principal and interest as of the petition date, and that the obligation owing to it from Mr. Reid was secured by real property located at 408-414 E. Eager St, Baltimore City, Maryland. On August 6, 2004, Mr. Reid's first Chapter 13 case was dismissed, and, on January 31, 2005, Mr. Reid filed the pending Chapter 13 case.

In this Chapter 13 case, Knarf filed a proof of claim [claim number 7] on August 18, 2006 in the amount of $70,551.08, the breakdown of which is (i) principal: $ 941.58 (ii) interest: $134.28, and (iii) attorneys' fees: $ 69,475.22. Like the proof of claim in Mr. Reid's prior Chapter 13 case, the subject proof of claim recites that it is secured by a security interest in real property located at 408-414 East Eager St., Baltimore City, MD. The proof of claim attaches a mortgage dated June 13, 1990 between the Debtor and TJRH Investors, Inc., with Knarf as assignee (the "Mortgage"). The original principal amount under the mortgage was $48,000 with interest at 16%. The Mortgage itself is past due; it calls for monthly payments of $667.81 for five years, with a balloon payment of $46,136.11 due on July 1, 1995.

<u>Burden of Proof</u>

Pursuant to § 502 (a) of the Bankruptcy Code, a proof of claim filed under § 501 (a) is deemed allowed unless an objection is filed. The proof of claim constitutes *prima facie* evidence of the validity and amount of the claim. *In re Harford Sands Inc.*, 372 F.3d 637 (4th Cir. 2004). Once an objection is filed, the objecting party caries the burden to go forward with evidence to refute the validity and amount of the claim. *In re Allegheny Int'l, Inc.*, 954 F.2d 167 (3d. Cir. 1992). If the objector then produces sufficient evidence to refute at least one of the allegations essential to the legal sufficiency of the claim, the burden of going forward shifts back to the claimant

to prove the validity of the claim by a preponderance of the evidence. *Id. Accord, Matter of Federated Department Stores*, 135 B.R. 950, 958 (Bankr. S.D. Ohio 1992).

<u>Knarf's Entitlement to Attorneys' Fees</u>

The disproportionate amount of Knarf's proof of claim relates to the attorneys' fees it has incurred in its efforts to enforce its claim and litigate with Mr. Reid with respect to its claim throughout the pendency of two bankruptcy cases. A review of the docket in this Chapter 13 case and Mr. Reid's prior bankruptcy case reflects that enforcing the claim has been no easy feat. Mr. Reid is litigious, has been represented by no fewer than six serial attorneys whose representation does not last long, and, during the times when he is between counsel, Mr. Reid files papers himself that are lengthy, confusing and request relief that is unclear and inconsistent. Throughout the course of these bankruptcy cases, and between them, the secured property has not been sold by foreclosure or otherwise.

Irrespective of the havoc that Mr. Reid has wreaked on Knarf and its attorneys in their efforts to protect Knarf's interest, the predicate legal issue is whether Knarf is entitled to attorneys' fees at all as part of its proof of claim. *See In re Griffin*, 310 B.R. 610, 617 (8th Cir.BAP 2004) ("To recover fees, the creditor must establish that it is oversecured in excess of the fees requested; that the fees are reasonable; and that the agreement giving rise to the claim provides for attorneys' fees.") (*citing, First Western Bank & Trust v. Drewes (In re Schriock Constr., Inc.)*, 104 F.3d 200, 201 (8th Cir.1997). *See also*, *In re Shangra-La, Inc.*, 167 F.3d 843, 849 (4th Cir.1999) (where debtor is curing default and assuming lease, the amount of attorneys' fees that must be paid under § 365(b)(1)(B) as part of lessor's pecuniary loss involves a contract issue to be determined under applicable state law). Thus, this involves determinations of whether the requested fees are reasonable, whether the

creditors' claim is oversecured and whether any contract governing the transaction provides for attorneys' fees.

1. Whether the Fees Are Reasonable

The Debtor makes much of the fact that, at the time Knarf filed its proof of claim, it alleged that the Debtor owed it principal in the amount of only $941.58, interest in the amount of only $134.28, yet sought attorneys' fees in the amount of $ 69,475.22. Moreover, by the time this case was heard, Knarf's attorneys' fees and expenses had risen to approximately $99,000. In the usual case, this would be considered nothing short of absurd as compared to a loan in the original principal amount of $29,000. In the circumstances presented herein, however, these fees actually represent a degree of restraint on the part of Knarf. Mr. Reid has been fighting Knarf over this claim for approximately six years. Mr. Reid has, rather consistently, been filing incomprehensible papers seeking a broad array of relief against Knarf. Mr. Reid and Knarf have been involved in one full evidentiary trial with respect to the proper interest rate to be applied to Knarf's claim, three lift stay actions with hearings in two of them, as well as four appeals, two of which were dismissed. In addition to defending their proof of claim in Mr. Reid's first bankruptcy case, Knarf is in the same position defending its claim in Mr. Reid's current bankruptcy case. Throughout Mr. Reid's ongoing one-man quest against Knarf, Knarf has billed, on average 6.5 hours per month, 68 hours per year and has incurred approximately $15,800 per year in legal fees. The total number of hours under these circumstances is reasonable. In addition, the average hourly rate at which these fees were incurred, $231 per hour, is reasonable.

2. Whether Knarf is Oversecured

In order for a secured creditor to recover on a claim for attorneys' fees, one of the showings that the creditor must make is that it is oversecured. *In re Griffin*, *supra*. While Knarf failed to provide any evidence of the value of its collateral at the hearing, the Debtor did testify that the Property was worth in excess of $500,000. This was the only valuation evidence presented to the Court. While the Debtor is admittedly no expert in real estate appraisals, in Maryland, a property owner is competent to testify as the value of his or her property. In this regard, Mr. Reid testified that he is the owner of the Property, that he resides at the Property, and that he has resided at the Property continuously since 1989. *See Williams v. Anne Arundel County*, 334 Md. 109, 127, 638 A.2d 74, 83 ( Md.1994) ("This Court permits an owner of realty to testify to the value of that owner's own property because of the owner's familiarity with the property.")

Based on Reid's valuation, Knarf enjoys a significant equity cushion and thus is oversecured.

3. Whether the Agreement Giving Rise to the Claim Provides for Attorneys Fees

The Mortgage that was assigned to Knarf provides the following with respect to the availability of attorneys' fees:

> ...and *upon any such sale* [after default] of said property under this mortgage, the proceeds shall be applied as follows: (1) to repayment of all expenses incident to said sale, including a counsel fee of one thousand dollars ($1,000) for conducting the proceedings without contest, but if legal services be rendered to the

> Mortgagee or to the Trustee or party *selling under the power of sale in connection with any contested matter in the proceedings, then such additional counsel fees and expenses shall be allowed out of the proceeds of sale as the Court may deem proper...*

(Emphasis added).

In addition, there is a provision in the Mortgage that requires a counsel fee of $1,000 if the mortgage is paid after foreclosure is authorized, but before the sale is consummated.

Knarf relies solely on *The Lomas & Nettleton Co.v. Humphries*, 703 F.Supp. 757 (N.D. Ill. 1989) for the proposition that the term "contested matter" in the Mortgage should be broadly construed to include Mr. Reid's bankruptcy cases, and that the covered fees in the clause should be read to include the attorneys' fees that Knarf incurrred defending its claim throughout the pendency of these cases.[1] To a point, Knarf is correct. After all, Mr. Reid admitted that he filed both the first and the current bankruptcy cases to avoid Knarf's pending and/or threatened foreclosure. In addition, the *Lomas & Nettleton* Court gives an expansive reading of the term "foreclosure" in the mortgage instrument at issue to include an action for reinstatement after default, even though there was no actual judgment of foreclosure. *Lomas & Nettleton*, 703 F.Supp. at 758.

Here, however, Knarf is asking for a far more expansive reading of the Mortgage language than the reading permitted by the *Lomas & Nettleton* Court. What this Mortgage has, and what the *Lomas & Nettleton* mortgage did not have, is a specific limitation that all attorneys fees will be paid (to the extent the foreclosure is contested) "*out of the proceeds of sale as the Court may deem proper*." (emphasis added). When a mortgage contains this limiting language, the mortgagee has

---

[1] The parties have not relied on, and the Court has not found any authority within the jurisdiction of the Fourth Circuit Court of Appeals on the narrow issue of the interpretation of a mortgage with language similar to the Mortgage in the circumstances presented herein.

been held to its terms. *See Hylton v. Cathey*, 225 Ala. 605, 144 So. 579, 580 (Ala. 1932) ("Where the mortgage merely provides that the mortgagee may sell the premises at public outcry and from the proceeds pay all costs of foreclosure, including an attorneys' fee, no attorneys' fee can be recovered in a suit in equity to foreclose; it being held that the provision thereof is confined to the sale made in exercise of the power."); *See also, citations contained therein*.

For illustrative purposes, it is helpful to compare the stringent language in the Mortgage with more broadly-drafted language in other mortgage instruments. *See, e.g., In re Mills*, 77 B.R. 413, 417 (Bankr. S.D.N.Y. 1987) (finding that the following language in a mortgage supported the allowance of fees incurred in a bankruptcy case by the mortgagee: "[t]hat if any action or proceeding be commenced (except an action to foreclose this mortgage or to collect the debt secured thereby), to which action or proceeding the mortgagee is made a party, or in which it becomes necessary to defend or uphold the lien of this mortgage, all sums paid by the mortgagee for the expense of any litigation to prosecute or defend the rights and lien created by this mortgage (including reasonable counsel fees), shall be paid by the mortgagor...."); *In re Nordmann*, 56 B.R. 634, 636 (Bankr.D.S.D. 1986) (holding that mortgagee was entitled to claim for attorneys' fees in chapter 13 case where mortgage provided that "the [debtors] shall pay all legal expenses and attorneys' fees when 'reasonably incurred [by mortgagee to] protect the lien of the Mortgage.'"); *Matter of Salisbury*, 58 B.R. 635, 638 (Bankr. D.Conn.1985) (holding that the following general language in a mortgage was a sufficient basis for an attorneys' fee award in a chapter 13 case: "[i]n the event of default, Borrowers agree to pay reasonable attorney fees and reasonable foreclosure costs as set by court.") None of the foregoing examples contain the limitation that attorneys's fees are to be paid exclusively out of the proceeds of sale. Knarf has cited no authority that the language of limitation ("from the

proceeds of sale") found in this Mortgage, is construed broadly enough to allow payment of its attorneys' fees in the circumstances of this case.

Because Knarf's Mortgage is exceedingly restrictive and because it contains the express limitation that attorneys' fees can only be paid from the proceeds of sale, the Court finds that the language in the Mortgage is not sufficient to support an award of attorneys' fees in the circumstances presented.

The Propriety of Knarf's Accounting

The balance of Mr. Reid's arguments are with respect to (i) the interest rate applied by Knarf after the dismissal of his first chapter 13 case, (ii) the date upon which the assignment to Knarf was effective and thus interest began to accrue in favor of Knarf, and (iii) whether Knarf should have immediately applied a $15,000 check from the Debtor during the pendency of his first bankruptcy case to pay down the principal of his loan, or whether Knarf appropriately held the check until it was granted relief from the stay to apply the proceeds of the check. As to all of these issues, the Court finds in favor of Knarf both as a matter of law and because the Debtor failed to carry his burden to refute any of the allegations essential to the claim's legal sufficiency with respect to any of the foregoing factors.

As to the interest rate to be applied, the Court finds that Knarf properly applied the 16% contract rate of interest in wake of the dismissal of Mr. Reid's first bankruptcy case. *See In re Martinson*, 2000 WL 33964097 (Bankr.C.D. Ill. 2000); *In re Irons*, 173 B.R.910 (Bankr. E.D. Ark. 1994).

The Court found to be credible Knarf's witness, Lisa Slater, who prepared the billing

statements and who that testified that the date of the assignment of the Mortgage to Knarf was October 2, 2000. Thus, interest in favor of Knarf on the underlying obligation began to accrue as of this date.

The Court did not find to be credible Mr. Reid's accounting witness, Ms. Veney because her calculations were based on underlying assumptions given to her by the Debtor, including application of a $15,000 check to the loan obligation on June 4, 2000, the very day that Mr. Reid gave the check to Knarf. Knarf, through Ms. Slater, testified that the $15,000 check was not applied until August, 2004 because the Debtor, at that time, was in a previous bankruptcy case. Accordingly, Knarf sought relief from the automatic stay prior to applying the check to its outstanding debt. As it turns out, Knarf was prudent in holding the check and seeking relief from the automatic stay of the Bankruptcy Code prior to applying the $15,000 check, because the Debtor objected to Knarf's motion for relief from the stay. The Court therefore accepts as proper Knarf's accounting based on the $15,000 check having been applied against Knarf's debt in August, rather than June, 2004.

Accordingly, all other objections to Knarf's proof of claim, including those objections to Knarf's calculations of interest and principal, are hereby overruled. Based on the findings set forth herein, Knarf's claim for principal in the amount of $941.58 as of August 18, 2006, plus late fees in accordance with the loan documents and interest at the rate of 16% per annum (applied retroactively over the life of the loan) in accordance with the loan documents is allowed. Knarf's claim for attorneys' fees is disallowed in its entirety. In consideration of the foregoing, it is, by the United States Bankruptcy Court for the District of Maryland hereby:

ORDERED that the Debtor's Objection [104] to claim of Knarf Investments on account of attorneys fees is sustained in part to the extent that the portion of the claim comprising Knarf's

attorneys' fees is disallowed and overruled as to all other grounds.

cc: Patricia A. Borenstein, Esquire
John C. Schropp, Esquire
Ellen W. Cosby, Chapter 13 Trustee

**END OF ORDER**